# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONROY SHIELDS,<br>    *Plaintiff*,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>    *Defendant*. | No. 3:18-cv-01655 (JAM) |

## ORDER DENYING MOTION TO DISMISS

This case asks whether a federal court in a medical malpractice action under the Federal Tort Claims Act ("FTCA") should apply the Federal Rules of Civil Procedure or should apply special state law pleading rules. Connecticut has a special pleading rule for medical malpractice actions. The Connecticut rule requires a plaintiff to file not just an ordinary complaint that states a claim for malpractice but also to attach to the complaint a detailed written opinion from a third-party health care provider to corroborate the plaintiff's claim. *See* Conn. Gen. Stat. § 52-190a.

I don't doubt the good intentions behind the Connecticut law to discourage baseless claims of medical malpractice. But the law imposes heightened pleading requirements that the FTCA does not require and that also conflict with the Federal Rules of Civil Procedure. Therefore, I decline to apply Connecticut's special pleading rule and will deny the Government's motion to dismiss the complaint.

### BACKGROUND

The complaint alleges the following facts, which I accept as true for the purposes of the Government's motion to dismiss. Doc. #13. Conroy Shields is a veteran of the U.S. Army. In 1995, Shields began complaining of back pain, and tests conducted that year by the West Haven Veterans Administration ("VA") Medical Center revealed damage in the area of the L4-L5

vertebrae. Despite this evidence of injury, and aware of the risks of not operating, the VA doctors refused to operate. Although Shields complained many times of back pain, and the VA conducted many MRIs showing back damage, the VA never showed those MRIs to Shields and consistently refused to operate on his back.

In 2016, the VA finally showed Shields an MRI revealing not only extensive back injury, but also the presence of exposed nerves, indicating that Shields was at risk of permanent paralysis. The VA still refused to conduct back surgery or any treatment other than pain relief, so Shields went to another hospital and had surgery. But by that time osteoarthritis had already set in. Now Shields will be in pain for the remainder of his life because of the VA's delay in properly treating his back.

Shields filed an administrative claim for malpractice with the VA, but the claim was denied. He followed by filing this lawsuit. Doc. #1. He has twice amended his complaint, Docs. #11 and #13, and he now sues the United States for medical malpractice under the FTCA.[1]

The Government moves to dismiss pursuant to Fed. R. Civ. P. 12 on grounds that Shields has not complied with Connecticut's special pleading requirements for a medical malpractice claim. *See* Conn. Gen. Stat. § 52-190a. Because the terms and operation of Connecticut's law are fundamental to this ruling, I will describe its pleading requirements in some detail.

Connecticut law provides that no civil action shall be filed for medical malpractice "unless the attorney or party filing the action … has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been

---

[1] Although the last amended complaint names only the VA as a defendant, the Government and Shields agree that the United States may be substituted as the proper party defendant. Doc. #17-1 at 7-8. The Clerk of Court shall dismiss the Veterans Administration as a defendant and substitute the United States of America as the defendant in this action.

negligence in the care or treatment of the claimant." Conn. Gen. Stat. § 52-190a(a). To implement this duty of inquiry, the law imposes an explicit good faith certification requirement: that "[t]he complaint … shall contain a certificate of the attorney or party filing the action … that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant." *Ibid.*

In addition to this good faith certification, the law provides that "[t]o show the existence of such good faith, the claimant or the claimant's attorney … shall obtain a written and signed opinion of a similar health care provider … that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion." *Ibid.* The plaintiff or his attorney "shall attach a copy of such written opinion" to the good faith certificate. *Ibid.*[2]

Thus, section 52-190a imposes three interlocking requirements on a plaintiff who wishes to file a medical malpractice action: (1) that the plaintiff make a reasonable inquiry to determine if there are grounds for a good faith belief that there has been medical negligence; (2) that the complaint "contain" a certification of the plaintiff or the plaintiff's attorney that the reasonable inquiry gave rise to a good faith belief that there was medical negligence; and (3) that the plaintiff "attach" to the certification a copy of the detailed third-party medical opinion.

I will refer to the Connecticut law as a "medical certification of merit" requirement, by which I mean primarily the law's requirement that a complaint include a corroborating medical opinion from a similar health care provider. The law provides that the failure of a plaintiff to

---

[2] The law provides that the plaintiff must retain the original of the medical opinion and that the copy of the opinion that is attached to the good faith certification must have "the name and signature of the similar health care provider expunged." Conn. Gen. Stat. § 52-190a. Moreover, "[s]uch written opinion shall not be subject to discovery by any party except for questioning the validity of the certificate." *Ibid.* The law does not impose any further requirement that the plaintiff call the author of the medical opinion as a trial witness or that the initial medical opinion play any role in the post-complaint adjudication of a medical malpractice claim.

3

obtain and file this medical opinion as part of the complaint is grounds for dismissal of the action. *See* Conn. Gen. Stat. § 52-190a(c).

The Connecticut Supreme Court has noted "that the purpose of § 52–190a and its requirement of a good faith certificate was to prevent the filing of frivolous medical malpractice actions." *Morgan v. Hartford Hosp.*, 301 Conn. 388, 398 (2011). It has ruled that both the good faith certificate as well as the medical provider opinion are "akin to a pleading that must be attached to the complaint in order to commence properly the action." *Ibid.*

Following the Government's filing of its motion to dismiss, I appointed *pro bono* counsel for Shields because I questioned whether the pleading requirements of section 52-190a should apply in a federal court action. I noted that "[f]ederal courts are divided on the issue of whether such a state law certification requirement applies in federal court, and the Second Circuit has not decided the issue. *See Cornelius v. ECHN Rockville Gen. Hosp.*, 2014 WL 2986688, at *1 (D. Conn. 2014) (discussing divided authority on this issue)." Doc. #21. After supplemental briefing and oral argument, the Government's motion to dismiss is now ripe for decision.

## DISCUSSION

The question here is whether Connecticut's medical certification of merit requirement applies to actions that are filed in federal court against the United States under the FTCA. It is an important question, not just to the parties but also because about half the States impose similar certification requirements for medical malpractice actions. *See* Benjamin Grossberg, *Uniformity, Federalism, and Tort Reform: The* Erie *Implications of Medical Malpractice Certificate of Merit Statutes*, 159 U. PA. L. REV. 217, 222-25 (2010) (surveying state statutes). Across the country courts are divided about whether these kinds of state law certification requirements should be given effect in a federal court. *See generally* 19 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 4511, at 253 (3d ed.) (discussing split of authority).

Sometimes this issue arises in federal diversity cases, *i.e.*, malpractice actions that end up in a federal court because the plaintiff is a citizen of a different State than the defendant medical provider. And other times the issue arises, as it does here, in the context of a medical malpractice claim against the United States under the FTCA. This difference in jurisdictional context is important. For diversity cases, the extent to which state law applies in federal court turns on consideration of the choice-of-law rules announced in the famous case of *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), and its progeny.[3] By contrast, the FTCA itself instructs the federal courts about the law that they should apply.

The FTCA says that when the United States is sued in tort "[t]he United States shall be liable … in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Similarly, it waives the Government's sovereign immunity for personal injury tort claims "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

The FTCA's reference to the "law of the place" is a reference to state law, and so "the FTCA directs courts to consult state law to determine whether the government is liable for the torts of its employees." *Liranzo v. United States*, 690 F.3d 78, 86 (2d Cir. 2012). But does this mean that a federal court must give effect to *all* of a State's laws—not only substantive rules of

---

[3] Although the *Erie* doctrine is a creature of diversity actions, the parties devote much of their briefing to whether the *Erie* doctrine should apply in a case under the FTCA. The Government says it should not, while Shields suggests that *Erie* concepts of substance/procedure should serve at least as a useful guide for deciding which state laws apply in FTCA actions. Because I conclude on other grounds that the text of the FTCA informs to what degree state law should apply and because I also conclude that the Federal Rules of Civil Procedure must prevail over Connecticut's pleading rules, I need "not wade into *Erie*'s murky waters." *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) (majority op.); *see also Cibula v. United States*, 551 F.3d 316, 321 (4th Cir. 2009) (noting that "because the FTCA contains an explicit instruction by Congress regarding which law to use, courts should not engage in their normal *Erie* analysis to make that determination.").

liability but also procedural filing rules? Or does the FTCA recognize limits on the scope of what state laws should apply in a federal court?

As I understand it, the Government's position is that the FTCA requires a federal court to adopt *all* of state law (whether dubbed "substantive" or "procedural"), at least so far as necessary to ensure that the Government is no worse off at the end of the day than a private medical defendant would be if sued for the same conduct. The Government's position amounts to what might be called an "equality of outcome determinative" approach: that Congress allows for a waiver of sovereign immunity only if the Government may be assured of exactly the same treatment as a private party defendant would receive if sued for malpractice in a Connecticut state court, and therefore that the Government is entitled to the benefit of all the same laws that might protect a private defendant if the action were filed under state law in a state court.

It seems to me that the Government's approach would lead to no limit on what state law procedural rules could be enforced in a federal court FTCA action. If Connecticut decided to discourage medical malpractice actions by imposing a $10,000 filing fee, must a federal court dismiss a medical malpractice action under the FTCA if the plaintiff declines to pay this exorbitant filing fee? If Connecticut required all medical malpractice plaintiffs to file their complaints on fluorescent purple paper, must a federal court dismiss a medical malpractice action under the FTCA if the plaintiff files on plain old white paper?

When I asked these questions at oral argument, the Government declined to answer. But the answers must be "yes" if the Government is correct that the FTCA requires the incorporation of all state law—no matter how procedure-laden—so long as necessary to ensure the Government the same litigation benefit as a private party defendant. For as the Government states in its briefing, "failing to enforce this requirement in federal court would lead to different

litigation outcomes depending solely on the forum," and "[t]o hold otherwise would result in the United States being treated differently than a private litigant" in violation of the FTCA. Doc. #33 at 3.

I don't agree with the Government for two reasons. First, the Government overlooks that the FTCA was intended to incorporate state law only to the extent that state law bears on the elements of substantive liability. Second, the Government overlooks that the FTCA does not license federal courts to displace the Federal Rules of Civil Procedure with contrary state law pleading rules. I will discuss both points in turn and explain why I think they foreclose the Government's argument that section 52-190a should apply in federal court medical malpractice actions under the FTCA.

### 1. *The FTCA's limited incorporation of state law*

The text of the FTCA does not support the Government's position that a federal court must adopt the entire corpus of state law if necessary to guarantee that the Government is no worse off than a private litigant would be. Both the relevant FTCA provisions condition their applicability on whether a private party defendant would be "liable" under state law. *See* 28 U.S.C. §§ 2674, 1346(b). These references to whether a private party would be "liable" are most reasonably understood to refer to the state law rules of substantive liability rather than the full range of all state procedural rules appurtenant to the pleading, trial, and determination of a claim.

This accords with the U.S. Supreme Court's interpretation of the FTCA's instruction for courts to apply the "law of the place" in FTCA actions: "we have consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State—the source of *substantive liability* under the FTCA." *F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994) (emphasis added). More recently, the Supreme Court has made clear its understanding of the limits on state law that is

incorporated by the FTCA, noting that "when defining *substantive liability* for torts, the [Federal Tort Claims] Act reiterates that the United States is accountable 'in the same manner and to the same extent as a private individual.'" *United States v. Kwai Fun Wong*, 575 U.S. 402, 419 (2015) (quoting 28 U.S.C. § 2674) (emphasis added).

The term "liable" has an established definition in tort law, and "[c]ertainly there is no warrant for assuming that Congress was unaware of established tort definitions when it enacted the Tort Claims Act in 1946, after spending some twenty-eight years of congressional drafting and redrafting, amendment and counter-amendment." *United States v. Neustadt*, 366 U.S. 696, 707 (1961) (cleaned up). According to the "legal dictionaries in existence when the FTCA was drafted and enacted," *Molzof v. United States*, 502 U.S. 301, 307 (1992), the term "liable" means "bound or obliged in law or equity; responsible; chargeable; answerable; compellable to make satisfaction, compensation, or restitution," BLACK'S LAW DICTIONARY 1102 (3d ed. 1933), or "responsibility; the state of one who is bound in law and justice to do something which may be enforced by action . . . from contracts either express or implied, or in consequence of torts committed," CYCLOPEDIC LAW DICTIONARY 660 (3d ed. 1940).

The FTCA's use of the term "liable," in its tortious context, indicates that the FTCA applies only those state laws that contribute to or define the extent to which a private party is substantively liable to another. Liability can—and frequently does—exist separate and apart from the procedures used to legally ascertain and resolve it. *See, e.g.*, *Pappas v. Philip Morris, Inc.*, 915 F.3d 889, 894 (2d Cir. 2019) (explaining how "substantive law is the law that governs the rights and obligations of individuals within a given jurisdiction," while "[p]rocedure is the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them").

For example, in *Rushford v. United States*, 204 F.2d 831 (2d Cir. 1953) (*per curiam*), the Second Circuit explained for an FTCA action that "Congress meant to make the proper state law in all respects the model for the *liabilities* it consented to accept; and that the 'circumstances' included as much those facts that would release a liability once arisen, as those on which its creation depended." *Id*. at 832 (emphasis added); *see also Lambertson v. United States*, 528 F.2d 441, 443-44 (2d Cir. 1976) (noting that "if the state would look to a state or federal statute in determining the *liability* of a private person for the tort in question, the same statute will be applied in *measuring the conduct* of the government") (emphasis added).

Perhaps the strongest case for the Government's maximalist position is *Richards v. United States*, 369 U.S. 1 (1962), in which the Supreme Court observed that the FTCA "requires application of the whole law of the State where the act or omission occurred," rather than just its "internal law." *Id.* at 10-11. Yet this language from *Richards* must be viewed in context, because the issue presented was not whether the FTCA incorporates state procedural rules *en toto* but whether it incorporates a state's choice of law doctrine (which *Richards* concluded it does).

The discussion of choice of law in *Richards* was concerned with the law determining the "substantive rights of the parties," *Richards*, 369 U.S. at 12, and choice of law rules are deeply bound up with the basic question of "liability," because one's legal obligations will often depend on what State's substantive law is applied. *Richards* stands for the proposition that the FTCA applies the "whole law" of liability (which includes choice of law). Thus, as the Sixth Circuit has recently ruled, *Richards* "meant only that federal courts had to apply a state's choice-of-law rules, not just its internal law," and "*Richards* never considered whether the FTCA also incorporates state procedural rules that conflict with the Federal Rules." *Gallivan v. United States*, 943 F.3d 291, 295 (6th Cir. 2019).

9

Connecticut's medical certificate of merit requirement is not a rule that prescribes liability. Instead, this rule—suggestively placed in Title 52 (state civil procedure rules), Chapter 900 ("Court Practice and Procedure")—concerns the technical procedures by which an action pleading medical malpractice may be initiated in a Connecticut state court. The rule does nothing to define substantively the scope and terms of "liability" for medical malpractice in Connecticut.

Other Connecticut law specifies what conduct warrants liability for medical malpractice. "[T]he plaintiff must prove (1) the requisite standard of care for treatment, (2) a deviation from that standard of care, and (3) a causal connection between the deviation and the claimed injury." *Gold v. Greenwich Hosp. Ass'n*, 262 Conn. 248, 254-55 (2002). It is true that "expert testimony is required to establish both the standard of care to which the defendant is held and the breach of that standard," *id.* at 255, and that this type of state law requirement is ordinarily deemed to be a liability rule that should be applied in FTCA cases, *see, e.g.*, *Gipson v. United States*, 631 F.3d 448 (7th Cir. 2011). But there is no equivalency between this requirement that a plaintiff prove liability by means of expert opinion *at trial* and the requirement of section 52-190a that a plaintiff attach a medical opinion *to the complaint*. Section 52-190a speaks only to what a plaintiff must include as part of the complaint, and it makes clear that the medical certification of merit must be anonymized to expunge the name of its author, that it is free from inquiry during discovery, and that it plays no role in the adjudication at trial of the malpractice claim.

A plaintiff who complies with the medical opinion requirement of section 52-190a will lose her case all the same if she does not additionally recruit an expert to testify at trial. In no sense, then, does the medical opinion requirement of section 52-190a contribute to or define the scope of substantive liability for a medical malpractice claim under Connecticut law. It is no

more than a procedural gatekeeping requirement. Accordingly, it falls outside the scope of substantive state liability law that a federal court must apply under the FTCA.

In short, the text of the FTCA instructs the federal courts to apply state law only insofar as state law may contribute to and define a rule and measure of substantive liability. Because Connecticut's medical certificate of merit requirement does not do so, it is not within the scope of state law rules that the FTCA directs a federal court to apply.[4]

### 2. *The FTCA and the Federal Rules of Civil Procedure*

Even if I am wrong about the degree to which the FTCA incorporates state law, it is beyond dispute that the FTCA preserves the requirement that federal courts apply the Federal Rules of Civil Procedure. As the Supreme Court has explained, "[t]he Tort Claims Act expressly makes the Federal Rules of Civil Procedure applicable to suits against the United States." *United States v. Reynolds*, 345 U.S. 1, 6 (1953); *see also United States v. Yellow Cab Co.*, 340 U.S. 543, 553 & n.9 (1951) (same); *Gallivan*, 943 F.3d at 295 (same).[5]

---

[4] Because the case before me arises under the FTCA, I have no occasion here to decide whether Connecticut's medical certification of merit requirement should apply in a diversity case and in a context where it may be necessary to address the contours of the *Erie* doctrine. The arguments for applying section 52-190a appear to be stronger in the FTCA context than in the *Erie* diversity context because the *Erie* doctrine embraces concerns that are not present for an action under the FTCA. For example, the *Erie* analysis is often driven by concerns about forum shopping, but there are no federal/state forum-shopping concerns in FTCA cases because they are invariably litigated only in federal court. Moreover, *Erie* promotes concerns for federalism and respect for state law in the ordinary diversity context of a lawsuit between private parties—concerns that are not present in the FTCA context involving whether the federal government should bear the costs of torts committed by federal employees. *See, e.g.*, *Ware v. United States*, 971 F. Supp. 1442, 1473 (M.D. Fla. 1997).

[5] The original text of the FTCA provided that "[i]n actions under this part (suits on tort claims against the United States), the forms of process, writs, pleadings, and motions, and the practice and procedure, shall be in accordance with [the Federal Rules of Civil Procedure]." 60 Stat. 844, 28 U.S.C. (1946 ed.) § 932. Although Congress later removed this language, the Supreme Court explained in *Yellow Cab* that the section was omitted not because Congress wished to apply state procedural law but because the express reference was "unnecessary because 'the Rules of Civil Procedure promulgated by the Supreme Court [adopted *after* the initial FTCA was approved] shall apply to all civil actions.'" *Yellow Cab*, 340 U.S. at 553 n.7 (quoting S. Rep. No. 1559, 80th Cong., 2d Sess. 12).

Moreover, the fact that the FTCA incorporates state substantive liability rules "does not impliedly supplant the Federal Rules with state procedural law." *Gallivan*, 943 F.3d at 295. Indeed, "it would make no sense to interpret 'law of the place' in which the alleged tort occurred to incorporate the state's entire procedural code—a move that would involve a wholesale preemption of the Federal Rules of Civil Procedure, an aim not plausibly attributable to the [FTCA]." *Gipson*, 631 F.3d at 451.

It is the Federal Rules of Civil Procedure that apply in this case. And I cannot apply Connecticut pleading rules if to do so would preclude a faithful application of the Federal Rules. The Supreme Court instructs that "the appropriate test for resolving conflicts between state law and the Federal Rules" is for a court to determine whether the federal procedural rule is "sufficiently broad to cause a direction collision with state law or, implicitly, to control the issue before the court, thereby leaving no room for the operation of that law." *Burlington N. R. Co. v. Woods*, 480 U.S. 1, 4-5 (1987) (cleaned up). After all, to apply two conflicting rules on the same subject would be to apply no rule at all.[6]

Section 52-190a is a pleading rule. It expressly imposes requirements for the filing of a valid medical malpractice complaint. It says that a medical malpractice complaint must "contain" a certificate of good faith, and it says that the plaintiff in turn must "attach" a copy of the medical opinion to the certificate that is part of the complaint. These words could not be clearer. That is why the Connecticut Supreme Court has noted that the certification documents are "akin to a

---

[6] A court must also evaluate whether the federal rule "represents a valid exercise of Congress' rulemaking authority, which originates in the Constitution and has been bestowed on this Court by the Rules Enabling Act," *Burlington N.R. Co.*, 480 U.S. at 5, but there has been no suggestion that any of the Federal Rules of Civil Procedure are themselves unlawful or would be unlawful as applied here, *cf. Shady Grove*, 559 U.S. at 407 (plurality op.) (noting that the Supreme Court has "rejected every statutory challenge to a Federal Rule that has come before us.")

12

pleading that must be attached to the complaint in order to commence properly the action." *Morgan*, 301 Conn. at 398.

It is impossible to reconcile the enhanced pleading requirements of section 52-190a with the requirements of the Federal Rules of Civil Procedure. To begin, Rule 8(a)(2) requires no more than a "short and plain statement" of a plaintiff's claim. "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And "the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993). But section 52-190a's requirement that the complaint be validated by a third-party expert's detailed opinion imposes precisely the type of additional and detailed pleading requirement that the drafters of the Federal Rules decided should not be required as a precondition for a federal court action.

The general pleading requirement of Rule 8 is subject to exception only for certain kinds of claims (such as fraud) which Rule 9 requires to be pleaded with particularity. *See* Fed. R. Civ. P. 9. But medical malpractice claims are not within the scope of claims that Rule 9 requires to be pleaded with particularity.

Similarly, Rule 12(b)(6) allows for a claim to survive a motion to dismiss so long as it alleges facts—as distinct from legal conclusions—that plausibly establish grounds for relief. *See Ashcroft*, 556 U.S. at 678. The "plausibility" requirement is "not akin to a probability requirement." *Ibid.* But section 52-190a conflicts with Rule 12(b)(6) because section 52-190a imposes what amounts to a *super*-plausibility pleading requirement—that a plaintiff buttress the credibility of otherwise plausible factual allegations with the affidavit of a third-party medical provider to vouch for the soundness of the plaintiff's malpractice allegations.

The State of Ohio has a certificate of merit requirement that is very similar to the Connecticut requirement. *See* Ohio Civ. R. 10(D)(2)(a) (requiring an expert affidavit of merit to accompany a complaint for professional malpractice). Recently the Sixth Circuit has ruled it to be incompatible with Rules 8, 9, and 12 of the Federal Rules of Civil Procedure, and the Sixth Circuit has declined to allow enforcement of the Ohio rule for FTCA medical malpractice actions. *See Gallivan*, 943 F.3d at 293-94.

The Seventh Circuit has also recently ruled that a failure to comply with Illinois' medical certificate of merit requirement is inconsistent with Rule 8's pleading requirements. In Judge Easterbrook's words:

> Rule 8 of the Federal Rules of Civil Procedure specifies what a complaint must contain. It does not require attachments. One can initiate a contract case in federal court without attaching the contract, an insurance case without attaching the policy, a securities case without attaching the registration statement, and a tort case without attaching an expert's report. Supporting documents come later.

*Young v. United States*, 942 F.3d 349, 351 (7th Cir. 2019).

In addition, section 52-190a is inconsistent with Rule 11(b)(2) of the Federal Rules of Civil Procedure which provides that a party or attorney's signature on a pleading constitutes a certification that the pleading's factual contentions "will likely have evidentiary support." Rule 11 does not further require—as section 52-190a does—that the party actually adduce such evidentiary support for good faith in the form of a third-party medical opinion to file a complaint.

The Government argues that section 52-190 is not really a pleading rule so much as it is a rule about service of process. *See Morgan*, 301 Conn. at 402 ("because the written opinion letter of a similar health care provider must be attached to the complaint in proper form, the failure to

attach a proper written opinion letter pursuant to § 52–190a constitutes insufficient service of process"). But tying a failure to comply with section 52-190 to a failure to serve process only underscores the essentially procedural nature of section 52-190a's pleading requirements. It also triggers yet another conflict with the Federal Rules—this time with Rule 4, which provides in detail the means by which one may effectuate service for cases in federal court. The Supreme Court has construed Rule 4 to prevail over more elaborate state rules for service of process. *See Hanna v. Plumer*, 380 U.S. 460, 470 (1965) (rejecting state service of process rule requiring in-hand service as contrary to Rule 4, explaining "the clash is unavoidable; Rule 4(d)(1) says—implicitly, but with unmistakable clarity—that in-hand service is not required by the federal courts").

I am not persuaded by the cases cited by the Government. Numerous cases in this District have applied section 52-190a in both the FTCA and diversity contexts, but these rulings did not have occasion to address in detail the arguments and issues raised in this ruling.[7]

The Government also relies on several federal appeals court decisions outside of the Second Circuit. But I agree with the Sixth Circuit that these rulings are distinguishable or not persuasive, in part because they "don't address Rule 12, and … don't offer a satisfactory response to the clear conflict between the federal pleading rules and the state affidavit-of-merit requirement." *Gallivan*, 943 F.3d at 296-97 (citing and disapproving *Hahn v. Walsh*, 762 F.3d 617, 629 (7th Cir. 2014), *Smith v. United States*, 498 Fed. Appx. 120 (3d Cir. 2012), *Swails v.*

---

[7] *See, e.g.*, *Hallums v. Dep't of Veterans Affairs*, 2017 WL 1230841, at *4 (D. Conn. 2017); *Berndston v. United States*, 2017 WL 830390, at *2 (D. Conn. 2017); *Gallinari v. Kloth*, 148 F. Supp. 3d 202, 207 & n. 1 (D. Conn. 2015); *Freeman v. United States*, 166 F. Supp. 3d 215, 220 (D. Conn. 2016); *Slocum v. U.S. Dep't of Veterans Affairs*, 2014 WL 4161985, at *2 (D. Conn. 2014); *Brant v. United States*, 2013 WL 12419884, at *2 (D. Conn. 2013); *Blumenkopf v. Conboy*, 2008 WL 4196974, at *1-*3 & n. 2 (D. Conn. 2008).

*United States*, 406 Fed. Appx. 124 (9th Cir. 2010), and *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111 (10th Cir. 2004)).

I agree instead with the Sixth Circuit's decision in *Gallivan*, the Seventh Circuit's decision in *Young,* and the sound reasoning of numerous district courts that have declined to apply similar state law pleading requirements in federal court. *See, e.g.*, *Ipock v. Manor Care of Tulsa OK, LLC*, 274 F. Supp. 3d 1249, 1252-55 (N.D. Okla. 2017); *McKinley v. United States*, 2015 WL 5842626, at *8-10 (M.D. Ga. 2015); *Estate of C.A. v. Grier,* 752 F. Supp. 2d 763, 770–771 (S.D.Tex. 2010).[8]

## CONCLUSION

For the reasons set forth above, the Government's motion to dismiss (Doc. #17) is DENIED. The Clerk of Court shall dismiss the VA as a defendant and substitute the United States of America as the defendant in this action.

The Court expresses its appreciation to attorneys Monte E. Frank and Daniel P. Scholfield of the law firm of Pullman & Comley for their *pro bono* representation of Mr. Shields in connection with the briefing and argument of the Government's motion.

It is so ordered.

Dated at New Haven this 31st day of January 2020.

                                                /s/ *Jeffrey Alker Meyer*
                                                Jeffrey Alker Meyer
                                                United States District Judge

---

[8] I appreciate the Government's notice of a pending case in the Second Circuit in which a *pro se* prisoner has raised an argument about whether Conn. Gen. Stat. § 52-190a should apply in a federal court FTCA action. *See Corley v. United States*, 18cv922-AWT (D. Conn.), *appeal pending* No. 19-4092 (2d Cir.). I trust that the Government's briefing in that case will apprise the Second Circuit of relevant precedent adverse to the Government's position.